UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ST. PAUL'S EVANGELICAL                         CIVIL ACTION
LUTHERAN CHURCH

VERSUS                                         NO: 06-6486

GUIDE ONE INSURANCE CO. ET                     SECTION: "A" (4)
AL.

**ORDER AND REASONS**

Before the Court is Quick Response's **Motion for Award of Interest, Collection Costs & Entry of Final Judgment (Rec. Doc. 130).** St. Paul's Evangelical Lutheran Church opposes the motion. The motion, taken under advisement on April 1, 2009, is before the Court on the briefs without oral argument.[1]

On February 2-3, 2009, this matter was tried to a jury. Prior to trial, the parties specifically agreed that Quick Response's entitlement to attorney's fees, interest, and collection costs would be decided by the Court via a post-trial motion in the event of a judgment favorable to Quick Response. (Rec. Doc. 81, PTC ME 4/24/08).[2] On February 3, 2009, the jury

---

[1] Quick Response has requested oral argument but the Court does not find that oral argument is necessary to resolve the issues presented.

[2] The Court recalls that prior to the start of the trial Mr. Fagan confirmed on the record that Quick Response would not be presenting any evidence pertaining to attorney's fees or interest in light of the parties' agreement to present those issues to the

1

rendered a verdict in favor of Quick Response for the full amount sought, $139,347.02.  (Rec. Doc. 127).

Via the instant motion, Quick Response ("QR") seeks a judgment awarding principal in the amount of $277,233.01, and interest accrued through April 6, 2009[3] in the amount of $34,654.13, plus interest accrued as of the date of the entry of final judgment at the daily rate of $141.49.[4]  QR also seeks $102,188.61 for attorney's fees and costs charged by its New Orleans counsel, the Leake & Andersson firm, $14,290.54 for costs and disbursements for its employees' assistance and participation in QR's collection efforts, $17,664.39 that QR paid to David Oakes as his work and services as an expert witness, and for post-judgment interest at the monthly rate of 1.5%.

### *Principal and Interest*

In support of its claim for principal and interest, QR argues that the jury's verdict of $139,347.02, which was the full amount that it sought from the jury, demonstrates that the jury concluded that QR was entitled to be paid the full amount of its

---

Court post-trial.

[3] April 6, 2009, is the day prior to the date that QR filed its reply memo with an updated chart of interest calculations. (Rec. Doc. 140).

[4] The daily rate of $141.49 is based on the amount of principal that QR contends remains due and the 1.5% per month finance charge included in the contract.

invoices which originally totaled $375,001.08.[5] QR points out that the parties' agreement provides for interest of 1.5% per month on any balances that remain unpaid after 30 days. QR has submitted a chart that calculates interest per month on unpaid principal balances after December 20, 2005.[6] (Rec. Doc. 140, Exh. 3-Revised). As payments were received, those payments were applied to unpaid interest first, and then to outstanding principal. (Id.).

In opposition, St. Paul's contends that QR is overreaching with the amounts that it seeks, particularly with respect to the interest claimed. St. Paul's points out that QR is seeking interest on an amount of principal far in excess of the jury's award of $139,347.02, and that to award QR the sums that it seeks would be in contravention of St. Paul's Seventh Amendment right to have the jury determine damages. St. Paul's takes the position that the jury was asked how much additional money QR was due and the answer was "$139,347.02." Thus, according to St. Paul's, any interest owed should only begin to accrue after the date of the verdict.

St. Paul's arguments are not persuasive. The entire dispute

---

[5] $196,121.70 was for work on the church building and $178,879.38 was for work on the fellowship building. (Tr. Exh. 4).

[6] December 20, 2005, is 30 days after the November 20, 2005, invoices became due.

leading up to the trial, and the issue ultimately put to the jury, was whether QR should be paid $375,001.08 for the work performed. The jury's decision to award QR the exact amount prayed for of $139,347.02 unequivocally demonstrates that the jury concluded that QR should have been paid the $375,001.08 that it invoiced St. Paul's *back in November 2005*. The jury was crystal clear on that point because it even gratuitously added to the verdict form that QR should also receive "the cost of collection including reasonable attorney's fees, cost [sic], & disbursements." (Rec. Doc. 127-2). The figure of $139,347.02 was never an actual number representing the amount truly owed because that number was obtained by simply subtracting the payments previously received from the original invoice amount *without accounting for interest owed*. (Tr. Exh. 14, Stip. ¶ 12). And again, it was agreed that interest would be addressed by the Court post-trial once the parties had the jury's verdict on the reasonableness of the $375,001.08 invoice amount.

Having the benefit of the jury's determination with respect to the charges of $375,001.08, QR's entitlement to the sums it now seeks are governed by the Work Authorization contract (Tr. Exh. 1), by Louisiana law, and by the pleadings filed in this matter. The Work Authorization contract states that a finance charge of 1.5% per month will be applied to any unpaid balances after thirty (30) days. (Tr. Exh. 1). The invoices upon which

QR filed suit were dated November 20, 2005, so by contract interest of 1.5% per month began to accrue as of December 20, 2005. It is undisputed that QR did not receive the first installment from St. Paul's until June 23, 2006, and that the last of any payments was made on July 29, 2008.

On February 23, 2007, QR filed its counterclaim against St. Paul's. (Rec. Doc. 21). QR specifically pled for interest that had accrued *subsequent to* the August 4, 2006, demand letter that it had sent to St. Paul's. The August 4, 2006, letter references an outstanding balance of $270,886.74, remaining on an invoiced total of $403,126.16. (Tr. Exh. 6). The $403,126.16 amount was derived by adding interest to the original charge of $375,001.08. However, the supporting invoice demonstrates that QR only began to charge interest as of 1/19/06. (Tr. Exh. 4). Thus, QR pled a claim in this litigation for the contractual interest it was owed on the unpaid balances but its claim was only for interest accruing from 1/19/06, which is the interest date implicit in the August 4, 2006, demand letter that QR mentioned no less than seven times in its answer and counterclaim. The references to the interest claim in the pre-trial order are not specific and therefore did nothing to expand the scope of the complaint. (Rec. Doc. 82). QR's claim for interest is confined to the claim asserted in its complaint against St. Paul's and its claim cannot

now be enlarged to include interest accrued prior to 1/19/06.[7] Accordingly, the Court finds that QR has asserted a claim in this litigation for contractual interest accruing subsequent to the August 4, 2006, demand letter, which entails an interest triggering date of 1/19/06.

The Court also finds that QR's methodology of applying the payments received to satisfy accrued interest first, with the remainder being applied to principal is reasonable and correct under Louisiana law. Thus, in light of the jury's verdict, the payments previously made, the interest provided in the contract, and the claim for interest specifically pled, QR is entitled to a final judgment against St. Paul's in the principal amount of $272,011.75, and interest in the amount of $36,811.47, accrued as of April 20, 2009, the date of entry of the final judgment.

### *Attorney's Fees*

The Work Authorization provides for reasonable attorney's fees in the event that legal proceedings are necessary to collect any amounts due. (Tr. Exh. 1). The Court finds that the attorney's fees and costs in the amount of $102,188.61 are reasonable over the course of this litigation. The billing summary demonstrates that multiple attorneys did not work on this

---

[7] The difference between interest accrued as of 12/20/05, and 1/19/06, is approximately $5,437.53, which deletes 11 days of interest in December 2005 and 18 days of interest in January 2006 from the figures provided in QR's revised Principal and Interest Computation chart. (Rec. Doc. 140 Exh. 3).

case until immediately prior to trial and it would certainly be unreasonable to expect one attorney to prepare and try this case. The modest charges for the paralegals are permissible. See Town of Walker v. Stafford, 833 So. 2d 349 355 (La. App. 1st Cir. 2002).

### *QR's Costs of Collection*

The Work Authorization provides for costs of collection which includes reasonable attorney's fees, costs, and disbursements in the event that legal proceedings are necessary to collect any amounts due. (Tr. Exh. 1). QR seeks $14,290.54 in costs. The itemized list of costs is basically an expense account listing of meals, hotels, and travel for QR's personnel who traveled to New Orleans in conjunction with the case. The Court concludes that these "costs," which include patronage at some of the city's best restaurants, should be borne by QR.

### *Expert Fees for David Oakes*

QR seeks $17,564.39 in expert fees and expenses attributable to David Oakes. Oakes testified at trial as a general contractor and water restoration expert. The invoices submitted by Oakes do not describe the specific work he performed in conjunction with each invoice.

The Court finds that $17,,564.39 far exceeds what QR can reasonably recover from St. Paul's for this expert. Notwithstanding what amounts QR actually paid to Oakes, St.

7

Paul's will be assessed for $4,000.00 of his fees, plus his New Orleans travel and lodging expenses which totaled $1,240.42. These amounts are more than reasonable based on the fees that other hurricane experts have been receiving in this district.

Finally, interest will continue to accrue at the contractual rate of 1.5 percent per month ($136.01 per day) until the judgment is satisfied.

Accordingly;

**IT IS ORDERED** that Quick Response's **Motion for Award of Interest, Collection Costs & Entry of Final Judgment (Rec. Doc. 130)** is **GRANTED IN PART AND DENIED IN PART** as explained above. Judgment will be entered accordingly.

April 20, 2009

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE